## Case No. 2,158.

### In re BURKE.

[St. Paul & M. Pioneer Press, Jan. 25, 1879; Spear, Extrad. (2d Ed.) 451; 19 Alb. Law J. 509.]

District Court, D. Minnesota. Jan., 1879.

EXTRADITION—ABUSE OF PROCESS—PROCEDURE—INTERFERENCE BY STATE COURT—"CRIME."

[1. That a duly-appointed officer for that purpose, who has arrested an alleged fugitive from justice in extradition proceedings, made statements to the prisoner and his counsel which might have conveyed the impression that the criminal proceedings for which the arrest was made could be averted by a settlement of the prisoner's indebtedness, is insufficient to enable the court to say that there has been an intent to abuse process, as such statements might well have been made to quiet the prisoner and his counsel, and thus avoid delay or inquiry into the regularity of the officer's authority.]

[2. The prisoner was arrested in Minnesota on a requisition from the governor of Illinois, and was discharged on habeas corpus in Wisconsin, while being transported through that state. Returning to Minnesota, he was there re-arrested by the officer. Held that, the proceedings to extradite the prisoner being regular, and in compliance with Act Cong. 1793, c. 7 (1 Stat. 302), regulating such proceedings, the discharge of the prisoner by the Wisconsin court was violative of Const. U. S. art. 4, relating to the extradition of fugitives from justice, and requiring the several states of the Union to give full faith and credit to the acts and judicial proceedings of other states, and consequently void, and that the officer was justified in re-arresting the fugitive.]

[See note at end of case.]

[3. "Crime," in Const. U. S. art. 4, § 2. relating to the extradition of persons charged with crime, means any offense indictable by the laws of the state demanding the surrender, and is not confined to common law crimes.]

[See note at end of case.]

[4. Where an affidavit for the extradition of a fugitive, tested by the common law rules, may not be sufficient to charge a crime, yet if the requisition states that the offense charged is a statutory crime, the warrant of arrest being issued on both the affidavit and requisition, the requirements of Act Cong. 1793, c. 7 (1 Stat. 302), prescribing the procedure on extradition, are sufficiently complied with.]

[See note at end of case.]

[On habeas corpus. The petitioner, James H. Burke, was duly appointed as agent to receive and transport one Samuel Frank to Illinois as a fugitive from justice, in furtherance of a requisition by the governor of that state upon the governor of Minnesota. Frank was delivered to petitioner, and while proceeding through Wisconsin, en route to Illinois, was discharged on habeas corpus by a court of that state, and, returning to Minnesota, he was re-arrested by petitioner. For this re-arrest petitioner was himself arrested, and committed on a charge of kidnapping, and he now seeks a discharge from imprisonment on such commitment. Discharge ordered.]

NELSON, District Judge. It is important an early decision should be reached. I have examined the papers and considered the evidence. My impression on the hearing has ripened into a conviction, and I am prepared to announce the result. On January 15, 1879, James H. Burke presented a petition for a writ of habeas corpus, alleging that he is restrained of his liberty and held in custody by the sheriff of Ramsey county, in the state of Minnesota, for an act done by him under the constitution and laws of the United States.

This act fully set out in the petition on file, and alleged to be the sole and only reason for his detention, is the arrest of one Samuel Frank, under and by virtue of the warrant of Governor Pillsbury, of the state of Minnesota, issued upon the requisition of Governor Cullom, of the state of Illinois, demanding the arrest of said Frank as a fugitive from justice of the state of Illinois, accompanied by an affidavit or sworn complaint, charging that he committed a criminal offense in Cook county, to wit: "Designedly obtaining goods of another by false pretense, with intent to cheat and defraud, on or about the 20th day of August, 1878, in that, on said day, Samuel Frank did, in said county and state, with intent to cheat and defraud Leopold Bros. & Co., * * * doing business in said county, at Chicago, designedly, by false pretense, obtain from said Leopold Bros. & Co., goods and merchandise, etc." The demand of Governor Cullom is accompanied by the application of Leopold Bros. & Co., stating that Frank is in Ramsey county, Minnesota, and asking for the requisition; and a certificate of the judge of Cook county, that the ends of justice require the return of said Frank; also the appointment of the petitioner, James H. Burke, in accordance with the laws of the United States, as messenger and agent to receive, from the proper authorities of the state of Minnesota, Samuel Frank, and convey him to the state of Illinois, to the sheriff of Cook county.

The requisition and demand of Governor Cullom also certifies the copy of affidavit annexed as authentic, and that obtaining property by false pretenses, charged therein, is a crime against the laws of the state of Illinois.

A writ of habeas corpus was issued under section 753, Rev. St. U. S., and the sheriff of Ramsey county has made return thereto that he holds the petitioner by virtue of certain proceedings, warrants, and commitments

attached, to-wit: Certified copy of a warrant of a judge of the district court of Ramsey county, commanding the arrest on the complaint of C. D. O'Brien, to-wit: "That on the 9th day of January, 1879, at the city of St. Paul, in the county of Ramsey and state of Minnesota, one James H. Burke then and there being, did, without lawful authority, and willfully and maliciously and with force and arms and with a wrongful intent, to wit, with the intent to extort money from one Samuel Frank, * * * cause said Frank to be seized and taken out of said state, and confined him against his will with the design and intent to extort money from him," etc. Also certified copies of warrants of commitment by the judge of the municipal court of the city of Saint Paul.

The petitioner files a replication that the acts alleged in the complaint and warrant of arrest annexed to the return of the sheriff, and which constitute the supposed offense, were in truth and in fact the same set out in his petition.

On the hearing, testimony has been introduced to disprove the complaint filed and the warrant issued by the district court of Ramsey county, and also for the purpose of showing that the petitioner intended to abuse the warrant of the executive of Minnesota to take Samuel Frank out of the state, not for the purpose of delivery, to be tried for the crime of which he is accused. This latter testimony consisted of conversations between the petitioner and Frank when in his custody, and statements and propositions made to the counsel of Frank after he had been discharged from custody by a writ of habeas corpus and re-arrested, for the purpose of allowing him to proceed peaceably and without molestation by the state of Illinois with his prisoner. A certified copy of the records of the county court of St. Croix county, Wisconsin, is also introduced in evidence, showing the discharge of Frank from the custody of the petitioner by a writ of habeas corpus issued by the judge of that court, in the return to which writ this petitioner presented the requisition of Governor Cullom, of Illinois, and accompanying papers, and the warrant of Governor Pillsbury, of Minnesota, authorizing his arrest, which are set up in his petition here as a justification of his action.

The questions to be determined in this case are:

First. Was the petitioner protected by the warrant of the executive of the state of Minnesota, authorizing him to arrest Frank, issued on the demand of the executive of the state of Illinois and accompanying affidavit charging him with committing an offense which was made a crime by the laws of the state of Illinois? Unless some act was done under it not authorized by the warrant, this proposition does not admit of argument.

The law only obliges an officer to look to his warrant and obey it, if regular and valid on its face and issued by a person authorized to issue warrants of that description, under certain circumstances. The jurisdiction of the executive of Minnesota to issue a warrant is not denied, but it is asserted this warrant was procured in bad faith, and the petitioner intended to pervert the remedy and serve other purposes. The petitioner is only the agent appointed by Governor Cullom, of Illinois, to receive and deliver Frank, the alleged fugitive from justice, and the proceedings were initiated by the authorities of that state, and not by him.

Admitting that the statements and declarations of the petitioner tended to show that, in his opinion, which is the most that can be claimed for them, Frank was arrested by a requisition for the purpose of getting him into custody so that he might be readily carried to Illinois with a view of perverting the remedy, we must assume also that the authorities of the latter state committed a trick and deception, although the executive action and all the proceedings are prima facie evidence of their regularity and legality; and, further, that if the proceedings anterior to the issue of Governor Pillsbury's warrant, in the opinion of this officer, were a deception, he may not execute it; and, if he does, he is guilty of the crime of kidnapping. The opinion of the agent cannot overcome the presumption of regularity which attaches to the proceedings, and he cannot be permitted to decide upon matters submitted by law to the executive.

If the petitioner, after the arrest, had done an act not warranted by the executive writ, showing a design on his part to use it for a purpose not contemplated by the extradition proceeding, as, for example, taken his prisoner to a foreign country (see In re Bull [Case No. 2,119]), there could be little doubt he must answer to the criminal laws of the state of Minnesota.

But I can find nothing in the proceedings and the testimony or in the conduct of the petitioner which shows that he "without lawful authority, willfully and maliciously, and with wrongful intent, caused Frank to be seized and taken out of the state with the design to extort money from him."

So long as he had Frank in custody he was proceeding by a direct route to take him to the state of Illinois, and on his way he did no act which can be construed into a design to take him to any other place, or use the remedy as a pretext for any purpose other than the extradition papers contemplated. It is true the statements and conversation of the petitioner might convey the impression that Frank would be able to stop the criminal proceedings in the state of Illinois by arranging his private indebtedness incurred by the false pretense, and he would aid him in so doing, but a court cannot on such suspicion declare that the purpose of the officer was to kidnap his prisoner. He might have made such statements with the

design of quieting Frank and his counsel, and thus avoid any delay or inquiry into the regularity of his authority.

However censurable to some persons his conduct might appear, I cannot say he abused his authority and is not protected in the arrest of Frank by the warrant of Governor Pillsbury.

II. Was the petitioner justified by virtue of the authority conferred upon him by the original warrant of the executive of Minnesota, and the other extradition papers, in the re-arrest of Frank after his discharge by the state court of Wisconsin and his return to Minnesota?

If the prerequisites of the law of 1793 are complied with, and the warrant of the executive of the state to which the fugitive has fled is issued on the requisition of the executive of the demanding state, accompanied by a copy of an affidavit, charging a crime, under the laws of the latter, certified as authentic by the executive, and an arrest is made and delivery to the agent of the demanding state, then the person so arrested is legally restrained of his liberty, and may be removed to the state having jurisdiction of the crime. A discharge of the person under the writ of habeas corpus, by the judge of any court, whether state or federal, would be coram non judice, and void.

This presents the question whether the judge of St. Croix county exceeded his jurisdiction under the writ of habeas corpus, and his discharge of Frank is a nullity. I think this action of the state court of Wisconsin is the first reported instance of any interference by the judiciary of a state through whose territory the fugitive from justice is being transported, after the concurrent action of the two states alone interested in the transaction.

If there is any authority of law for it, then it becomes necessary, before the act of congress providing for the surrender of fugitives from justice can be successfully enforced, that more than two states must, at the time the requisition is made, assent to the arrangement. It has always been supposed that not only the original states of this Union who adopted and accepted the constitution, but also all states subsequently admitted on an equality with the original states, agreed to be bound thereby, and recognize the full force of every provision thereof, anything in the constitution and laws of the state to the contrary notwithstanding.

The first section of the fourth article of the constitution provides that "full faith and credit shall be given to the public acts, records and judicial proceedings of every other state," etc. And the last clause of the second section of the same article, the subject-matter thereof appearing to be in the minds of the framers of the constitution, in connection with the first section, provides that "a person charged in any state with treason, felony or other crime, who shall flee from justice and be found in another state, shall, on demand of the executive authority of the state from which he fled, be delivered up, to be removed to the state having jurisdiction of the crime." To carry out this latter provision of the constitution the act of 1793 was passed.

The papers presented on his return to the writ of habeas corpus before the state court of Wisconsin, and now by the petitioner before me, show that all the prerequisites are complied with, and if "full faith is to be given to the public acts, records and judicial proceedings" of any other state in the state of Wisconsin, these papers, duly authenticated under the seals of the states of Minnesota and Illinois, and signed by the executive of each state, are so entitled. If so, then, under the writ of habeas corpus, the court in Wisconsin, on discovering, by the return of the agent, that the person in custody was held by virtue of the constitution and laws of the United States in respect to fugitives from justice, and the two states interested in the transaction had concurred in their action, should have proceeded no further. Any action obstructing this constitutional right was absolutely void.

But if wrong in this view of the case, conceding that the Wisconsin court had jurisdiction to proceed further than an inquiry into the authority by virtue of which Frank was held, and examine into the legality of the requisition, affidavit, and other papers, let us see whether the proceedings are not regular, legal, and in conformity with the act of congress of 1793.

The term "crime" in this article of the constitution means any offense indictable by the laws of the state demanding the surrender, and it is not confined to common law crimes. While the affidavit annexed to Governor Cullom's requisition, tested by the common law rule, would not, perhaps, be sufficient to charge a crime of "false pretenses," yet when the requisition is examined, it is there stated that the offense with which Frank is charged in the affidavit annexed is a crime under the laws of the state of Illinois. The warrant of Governor Pillsbury being issued, not on the affidavit alone, but on the demand of Governor Cullom also, the requirements of the law of 1793 were fulfilled, and is a conclusive reason to my mind why the action of the Wisconsin court is a nullity.

To sum up in the language of Mr. Spear, an able writer upon interstate extradition procedure: "It necessarily results, when the executive warrant for a surrender of the alleged fugitive has been issued in conformity with law, no judicial power can interpose to arrest or defeat its operation. Unless countermanded by the authority issuing it, all the remedies of the accused party, if he has any, must be sought in the state or territory to which he is surrendered."

The petitioner was, therefore, protected by

the executive warrant in the re-arrest of Frank, and he is dischaiged from the custody of the sheriff.

[NOTE. The federal and state courts have concurrent jurisdiction in interstate extradition proceedings. In re Roberts, 24 Fed. 132. On habeas corpus the federal court may inquire into the cause of detention of a prisoner held by virtue of extradition proceedings,—Ex parte Smith, Case No. 12,968,—but cannot inquire into the guilt or innocence of the prisoner,—In re White, 5 C. C. A. 29, 55 Fed. 54. The identity of the prisoner is always an open question. In re Leary, Case No. 8,162. The warrant is conclusive evidence that the person named therein stands charged with the crime. Id. The affidavit must distinctly state the commission of a crime within the state demanding the extradition. Ex parte Smith, supra; Ex parte McKean, Case No. 8,848. Crime, within the meaning of the constitutional provision respecting extradition, includes anything which by the laws of the demanding state is punishable as a crime,—In re Leary, supra,—and includes misdemeanors,—Kentucky v. Dennison, 24 How. (65 U. S.) 66; Ex parte Reggel, 114 U. S. 642, 5 Sup. Ct. 1,148; In re Keller, 36 Fed. 681; Com. v. Johnston, 12 Pa. Co. Ct. R. 263. The warrant must set forth the affidavit or indictment on which it is founded. In re Doo Woon, 18 Fed. 898. A person charged may be committed before a demand made for his extradition. Ex parte Romanes, 1 Utah, 23. The certificate of the demanding governor is not evidence of fleeing from the state. In re Jackson, Case No. 7,125; In re Cook, 49 Fed. 833. As to who is a fugitive within the constitutional meaning, see Ex parte Brown, 28 Fed. 653; Roberts v. Reilly, 116 U. S. 80, 6 Sup. Ct. 291; Ex parte Reggel, supra: In re Keller, supra; In re White, 5 C. C. A. 29, 55 Fed. 54; Tennessee v. Jackson, 36 Fed. 258. An absconding apprentice may be extradited. Boaler v. Cummines, Case No. 1,584. The only power of a governor is given by the constitution and laws; he cannot act on grounds of public policy or comity. Ex parte Morgan, 20 Fed. 298; and see In re Perry, 2 Cr. Law Mag. 84; also, Ker v. Illinois, 119 U. S. 436, 7 Sup. Ct. 225; Com. v. Johnston, supra. An agent to receive a fugitive from the state by which he is surrendered is not an officer of the United States. Robb v. Connolly, 111 U. S. 624, 4 Sup. Ct. 544. An agent arrested for malicious prosecution is restrained for an act done in pursuance of a law of the United States. In re Titus, Case No. 14,062. A fugitive may be tried for another crime than that for which he was arrested New Jersey v. Noyes, Id. 10,164. Contra, In re Fitton, 45 Fed. 471. The federal government has no power to compel the surrender of a fugitive by the authorities of one state to the authorities of another. Kentucky v. Dennison, supra.]