## George M. Hibler v. The State.

1. Habeas Corpus.—A writ of *habeas corpus* was on a proper application awarded and made returnable to the Supreme Court. After the return of the writ and the delivery of the prisoner to the sheriff of Travis county, he declined to further prosecute the application, and was on the judgment of this court remanded to the custody from which he was taken. On appeal to the Supreme Court from a subsequent refusal of the District Court to release him from custody on his second application for *habeas corpus*, in which he had failed to allege newly-discovered testimony, as required by art. 2642, Paschal's Dig.: *Held*, 1st. That the judgment of this court remanding the prisoner to custody was in contemplation of law a judgment upon the hearing of the prisoner's application. 2d. That it was a final judgment of this court on the first application, since this court could not have remanded him to custody had not the return shown *prima facie* cause for his imprisonment.

2. Habeas corpus—Fugitive from justice.—A requisition made upon the Governor of Texas by the governor of a sister State for the arrest of one claimed as a "fugitive from justice" is sufficient authority for the issuance of an order by the Governor of Texas for an arrest, and a prisoner arrested under such circumstances could only obtain relief on *habeas corpus* by showing that the presumption on which the Governor of Texas acted was unfounded in fact.

3. Habeas Corpus.—When a copy of the indictment accompanying a requisition upon the Governor of Texas for one claimed to be fugitive from justice is certified as authentic by the governor who makes the requisition, no further authentication is needed under sec. 5278, Rev. Stat., U. S.; and the absence of a seal to the certificate of the clerk of the court in which the indictment purports to have been found, or of a file-mark on the indictment, will not be noticed in this court on *habeas corpus*.

4. Habeas corpus—Constitutional law.—The provision of the Federal Constitution relating to the surrender of fugitives from justice is in the nature of a treaty stipulation between the States of the Union, and is equally as binding on each State and all the officers thereof for its faithful execution as though it were a part of the constitution of each State, and this even if Congress had passed no laws on the subject.

5. Habeas corpus.—The dangers of abusing the privileges of the writ referred to.

Appeal from Dallas. Tried below before the Hon. Silas Hare.

On the 15th of April, 1875, the relator applied to and obtained a writ of *habeas corpus* from Hon. Silas Hare, judge of the Criminal District Court of Dallas city, directed to Clifton Scott, and returnable on the 17th of April. On the 19th Scott made his return. On 21st of April Hibler filed his amended petition and application in aid of his original application, denying the authority or jurisdiction of Governor Coke to issue the warrant for his arrest, and further denying that he was a fugitive from justice.

In support of his denial of being a fugitive, relator filed the affidavits of Roberts and one Warren, which, however, failed to show any knowledge on their part on the subject.

The relator then filed his motion to be discharged on account of the insufficiency of the return and the illegality of the warrant.

On the 23d day of April the district attorney moved the court to dismiss the proceeding for the reason that the matter had already been adjudicated by the Supreme Court.

This motion was sustained, and an appeal taken from this ruling of the court.

*Hancock, West & North* and *Stemmons,* for relator.

*George Clark, Attorney General,* for the State.

ROBERTS, CHIEF JUSTICE.—The court below having granted the writ of *habeas corpus,* the prisoner was produced in court by Clifton Scott, the person having him in custody, with a return of the cause of his detention, which consists of the order of the Governor of Texas and the copy of a judgment of the Supreme Court of the State of Texas, on the 14th day of April, 1875, in the matter of *habeas corpus* then determined upon the application of said Hibler, in which he was then and there by said court remanded to the custody of Clifton Scott, agent of the State

of Mississippi, who had detained him under the said order of the said governor.

The District Court, upon hearing the said application with the return, dismissed it, and remanded the prisoner into the custody of the said Scott, upon the ground that the case of the said Hibler, upon *habeas corpus*, had been heard and determined by said Supreme Court on original application, and that in the petition of said Hibler for *habeas corpus*, then pending before the said District Court, there was no new ground set forth which entitled him under the law to have the said second application for the writ of *habeas corpus* further entertained by the said District Court.

The District Court acted upon the following clause of our Code of Criminal Procedure, to wit: "A party may obtain the writ of *habeas corpus* a second time by stating in the application therefor that since the hearing of the first application important testimony has been obtained, which it was not in his power to produce at the former hearing. He shall also set forth the testimony so newly discovered, and if it be that of a witness, the affidavit of the witness shall also accompany the application." (Paschal's Dig., art. 2642.)

By the succeeding article this even is not permitted after judgment of the Supreme Court on appeal. The judgment of the Supreme Court embraced in said Scott's return was not rendered on an appeal.

In passing upon the decision of the District Court in this appeal two questions are presented for consideration: first, did the judgment of the Supreme Court, as embraced in said Scott's return, show that it was rendered upon a hearing upon the application before the Supreme Court; and secondly, does the petition on the second application state that since the hearing of the first application important testimony has been obtained, which it was not in his power to produce at the former hearing? It is not necessary

now to consider how far this affirmative grant of a second application implies a negative upon any and all other terms or conditions upon which a second writ may be granted. There was no attempt to comply with it in this second application, because, as it is contended by counsel for appellant, the judgment of the Supreme Court, a copy of which was embraced in Scott's return, was not rendered upon a hearing of the *habeas corpus* case, as contemplated by the statute, but that it was in effect like a non-suit taken voluntarily by a plaintiff in a civil suit, which did not prevent another suit upon the same cause of action. This is the main question before us now upon this appeal from the judgment of the District Court.

The said copy of the judgment of the Supreme Court reads as follows:

"No. 2707. *Ex parte* G. M. Hibler. *Habeas Corpus.*— Application for writ of *habeas corpus* having been granted by Justice Reeves, returnable to this court, and the prisoner being before the court, and in charge of the sheriff of Travis county, by order of this court made at a previous day of the court, and the prisoner being present in court, by his counsel, declined further to prosecute the application, it is ordered by the court that the prisoner be remanded into the custody of Clifton Scott, as agent of the State of Mississippi, remitting him to his power under the order of the Governor of the State of Texas, and the prisoner be adjudged to pay the costs of this proceeding, and a copy of this judgment be furnished said Scott by the clerk of this court."

This is not in the nature of a judgment upon voluntary non-suit in a civil action. The prisoner had been taken out of the custody of Scott and placed in charge of the officer of this court, the sheriff of Travis county, pending the trial. The applicant's petition and Scott's return showing his authority from the Governor of Texas were before the court; the case stood before the court on trial;

the counsel for the prisoner declined to proceed any further in the investigation, either from choice or from the want of evidence to further prosecute the case. The prisoner being under the charge of the court, could not and would not have been remanded back to the custody of Scott if his authority to detain him as his prisoner under the warrant of the Governor had not been deemed *prima facie* sufficient for that purpose. Thus was it a hearing and adjudication of the case then before the court on trial. Such is the plain import and legal effect of the judgment of the Supreme Court. We do not think that the court below erred in acting upon it as a final judgment of this court upon the hearing of the cause of *habeas corpus,* and in regarding the application made to that court in the case now before us on appeal as a second application for the writ of *habeas corpus.*

Admitting that there could be a second application for the writ entertained and heard upon some other ground than that specified in the code—the discovery of other important testimony that could not be produced upon the first application—then we are of opinion that the grounds for relief set out in the petition and amended petition in this case as therein presented could not be held to be sufficient.

The amended petition contained a denial that he was a fugitive, and alleges that no evidence was furnished to Governor Coke of that fact as a foundation for his warrant. The words "fugitive from justice," as used in this connection, must not be understood in a literal sense, but in reference to the subject-matter, considering the general object of the Constitution and laws of the United States in relation thereto. A person who commits a crime in one State for which he is indicted, and departs therefrom and is found in another State, may well be regarded as a fugitive from justice in the sense in which it is here used. The requisition of the Governor of the State of Mississippi

would authorize the Governor of this State to act in reference to that subject under the Constitution and laws. If the applicant was not really a fugitive from justice as thus understood, and should undertake to set that up as a ground of relief upon *habeas corpus*, it could not be done by a mere denial, but by the statement of such facts as would show that the presumption upon which the Governor had acted was unfounded in fact, and that thereby this process was being perverted to his injury. It is unnecessary to consider under what possible circumstances such a ground of relief could be rendered available, as there are no such facts stated in this case upon that subject as would require such a consideration.

The amended petition also states that there was no indictment furnished to Governor Coke as evidence that said Hibler had committed the crime of murder in the State of Mississippi. The predicate for this allegation, as contended for by counsel, is the lack of a seal to the certificate of the clerk of the court in which the indictment purports to have been found, and also that there is no filemark on the indictment made by the clerk at the time of the presentation of the indictment into court by the grand jury.

The Governor of the State of Mississippi, in making the demand for Hibler, furnished to the Governor of Texas a copy of the indictment against him for murder, "certified as authentic by the Governor" of the State of Mississippi. This is the mode of authenticating the indictment as prescribed by the laws of the United States. (Rev. Stat. U. S., sec. 5278.) This was recited in the warrant of the Governor of the State of Texas ordering the arrest of Hibler, in accordance with what was held to be requisite by this Court in the case of *ex parte* Thornton, 9 Tex., 635. Copies of these papers, the demand, the indictment, and the warrant of arrest, were all before the District Court, and are now embraced in the record on appeal to this court. This attack

upon the authority of the Governor of the State of Texas to act in the premises must fall to the ground.

The whole object of the amended petition is to assail the authority of the Governor of the State of Texas to act, for the want of the proper evidence upon which to act. It is not alleged or pretended to be shown that there is in fact no such indictment. It is not denied that there was such an indictment found against him; and no evidence was offered to prove that he had been acquitted of or otherwise relieved from the charge. The evidence before the Governor of Texas that there was a subsisting valid indictment against him for murder stood unimpeached; and that being established, his being found and arrested in this State established his position as a fugitive from justice in the meaning of the Constitution and laws of the United States.

There is nothing developed in this case which makes it necessary for this court to express any opinion as to the power of the Court to look behind the action of the Governor of Texas or that of the Governor of Mississippi, and afford a remedy against illegal imprisonment, however it might be covered up under the forms of law.

In this case the law has been fully complied with, and nothing has been shown to indicate the use of its forms to accomplish an improper object or a perversion of justice.

This provision of the Constitution of the United States, requiring the surrender of fugitives from justice, is in the nature of a treaty stipulation between the States of the Union, and it is equally binding upon each State and all of the officers thereof for its faithful execution, as though it was a part of the constitution of each State, whether Congress had passed laws relating thereto or not. Those laws have been passed to establish uniformity in the mode of performing this constitutional duty resting upon each State. When its execution is put into active operation by the proper authority of this State, the Governor, based upon the authentic information and demand as required

by law, it is equally obligatory upon all of the officers of this State as is the enforcement of any criminal proceeding under the constitution and laws of this State; and any undue means resorted to for the purpose of thwarting or preventing the due execution of this duty of the State are equally to be reprehended. This may be done by abusing and perverting the privileges of the writ of *habeas corpus* as well as by any other means. This is a great writ of liberty, by being left unshackeled with forms and conditions in the mode of obtaining it. Therefore it can easily be obtained where there is no foundation for it in fact or in law.

This would be an abuse of the privilege which, if frequently resorted to, might make it necessary to impose such limitations and restrictions upon the granting of it as would materially impair its efficacy. It is a privilege too dear to freedom to be endangered by intentional abuse of it by those who are connected with the administration of the laws. So it has been appreciated and acted on in times past, and, it is to be hoped, will continue to be in future.

These remarks are made to induce caution in the exercise of this high privilege, and a conscientious resort to it only to accomplish its legitimate purposes, rather than to make any reflection upon the proceedings in this case, which have doubtless been instituted under the belief of counsel that it has been done in the assertion and for the procurement of a lawful right.

We are of opinion that the judgment be affirmed, and that the sheriff of Dallas county, or any other person who may have the prisoner in custody, be required to deliver him forthwith to Clifton Scott, the agent of the State of Mississippi, under the warrant of the Governor of the State of Texas. It is ordered that copies of this judgment be furnished to the person having the prisoner in custody and to said Clifton Scott.

                                                    AFFIRMED.