## Ex Parte L. Bergman.

### No. 642.   Decided June 22, 1910.

**1.—Extradition—Complaint—Validity of Writ—Federal Law—State Statutes.**

Matters of extradition are under the Federal Constitution and Laws, and while State Statutes in aid and furtherance of such Constitution and Laws have been upheld and should be when called into use, it nevertheless does not affect the validity of the writ issued under authority of the Federal Constitution and Laws that the detailed provisions of the State Statutes are not in any given case required or used.

**2.—Same—Case Stated—State Statutes—Arrest.**

Where, in accordance with a warrant properly and legally issued by the Governor of this State upon due and legal request from the chief executive of another State, the relator was held in custody, he can not be heard to complain that he was not originally arrested in a particular manner directed by the State statute.

**3.—Same—Requisition of Demanding State—Charge made against the Relator—Presumption.**

It will be presumed, in the absence of a showing to the contrary, that the Governor of the asylum state in issuing his warrant for the arrest of the relator, in extradition proceedings, acted only upon a proper and legal requisition by the Governor of the demanding State; and when the Governor's warrant of arrest recites that relator was charged by indictment and convicted and that same was accompanied by copy of indictment, the same was sufficient.

**4.—Same—Affidavit—Indictment—Information—Conviction.**

The Federal Statutes, article 5278, requires that the demanding State must produce a copy of the indictment found, or affidavit made before a magistrate, and it may well be doubted that a person charged by information before conviction is within the meaning of section 2, of article 4, of the Federal Constitution, which requires that the fugitive from justice must be charged with some crime in the demanding State, but where a party has been legally charged under the laws of the demanding State with a crime by information and duly convicted thereof, he can be legally extradited from the asylum State to which he has fled.

**5.—Same—Fugitive from Justice, Who is.**

The Federal Constitution and laws define as to who is a fugitive from justice and are not controlled by State legislation, and the offenses not only in-

clude felonies but misdemeanors as well; besides it was not shown that the crime charged against the relator was not a felony in the demanding State.

Appeal from the District Court of Tarrant. Tried below before the Hon. Jas. W. Swayne.

Appeal from a habeas corpus proceeding denying release from arrest under extradition proceedings.

The opinion states the case.

*McLean & Scott* and *Walker & Williams,* for relator.—Upon question as to the means by which a fugitive from justice is to be held in the asylum state: Ex parte Ammons, 34 Ohio St. Rep., 518; Ex parte Lorraine, 16 Nev., 63; State v. Shelton, 79 N. C., 605.

Upon question of the insufficiency of the requisition of the Governor by the demanding state: Ann. Fed. Stat., vol. 3, sec. 5278; Ex parte Denning, 50 Texas Crim. Rep., 629, 100 S. W. Rep., 401; Ex parte Thornton, 9 Texas, 635; Ex parte Reggel, 114 U. S., 642; State v. Justus, 84 Minn., 236; Ex parte Dickson, 69 S. W. Rep., 943.

On question that the Governor of the demanding state must accompany his requisition by a copy of the indictment found or affidavit made, and that same charged the alleged fugitive from justice with the commission of some crime against the laws of the demanding state: Ann. Fed. Stats., vol. 3, sec. 5278; Ex parte Thornton, 9 Texas, 635; Ex parte McKean, 3 Hughes (U. S.), 23; Ex parte Hart, 63 Fed. Rep., 249; People v. Pinkerton, 77 N. Y., 245; Roberts v. Reilly, 116 U. S., 80.

*John A. Mobley,* Assistant Attorney-Geenral, for the State, filed an able brief, which is largely embraced in the opinion of the court and which cited all authorities cited in the opinion.

RAMSEY, JUDGE.—Relator sued out before Hon. Jas. W. Swayne, Judge of the District Court of Tarrant County, a writ of habeas corpus, alleging that he was illegally restrained of his liberty by L. J. Polk, chief of police of the city of Fort Worth. On hearing he was remanded to the custody of the sheriff of Tarrant County, who was instructed to turn him over to one W. McD. Cawthorn, agent of the State of Louisiana, for the purpose of enabling said Cawthorn to carry him out of the State of Texas and into the State of Louisiana, from which judgment appeal has been taken to this court.

The questions arising in the case and the matters urged as grounds for the discharge of relator are well presented and well briefed, both by him and by the State. Some of these questions are novel and several of them very difficult. It will be essential to make quite a full statement of the case and discuss at some length more than one of the questions raised.

1. It is insisted that the court below erred because relator was held by no process known to the statutes of this State, and that no complaint was ever filed against relator charging him with being a fugitive from justice, in accordance with the requirements of title 14, chapter 1, of the Code of Criminal Procedure of this State, and especially because relator was not held by any process of law, as required by article 1053 of said title and chapter of White's Code of Criminal Procedure.

Relator insists under this assignment of error that because the means by which a fugitive from justice is to be arrested, secured and held are not provided by action of Congress; that these articles of our Code of Criminal Procedure, which relate to fugitives from justice, must be strictly followed in order that one who is sought to be removed through extradition by another State from this State can be in this way removed and in no other way. Subdivision 2 of section 2 of article 4 of the Constitution of the United States reads as follows: "A person charged in any State with treason, felony or other crime, who shall flee from justice and be found in another State, shall, on demand of the executive authority of the State from which he fled, be delivered up to be removed to the State having jurisdiction of the crime." In pursuance of this provision of the Constitution the Congress of the United States enacted a statute as follows: "Wherever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the Governor or chief magistrate of the State or Territory from whence the person so charged has fled, it shall be the duty of the executive authority of the State or Territory to which such person has fled to cause him to be arrested and secured, and to cause notice of the arrest to be given to the executive authority making such demand, or to the agent of such authority appointed to receive the fugitive, and to cause the fugitive to be delivered to such agent when he shall appear. If no such agent appears within six months from the time of the arrest, the prisoner may be discharged. All costs or expenses incurred in the apprehending, securing, and transmitting such fugitive to the State or Territory making such demand, shall be paid by such State or Territory."

Article 1051 of the Code of Criminal Procedure of this State reads as follows: "A person charged in any other State or Territory of the United States with treason, felony or other crime, who shall flee from justice and be found in this State, shall, on demand of the executive authority of the State or Territory from which he fled, be delivered up, to be removed to the State or Territory having

jurisdiction of the crime." Article 1052 of the Code relates to the duties of judicial and peace officers of this State in the arrest and detention of fugitives from another State or Territory. Article 1053 defines the duty of the magistrates of this State when complaint is made that any person is a fugitive from justice from another State or Territory. Article 1054 sets forth the requisites of such complaint, and the succeeding articles of title 4, chapter 1, of said Code, relate to the procedure in such cases. These articles of the Code were enacted in aid and furtherance of the purposes of the provisions of the Constitution and statutes of the United States above quoted. The provisions of the Federal Constitution and statutes do not provide in detail a method for the arrest and detention of fugitives. If, however, in accordance with a warrant properly and legally issued by the Governor of this State upon due and legal request of the chief executive of another State, a person be held in custody, he can not be heard to complain because he was not originally arrested in a particular manner directed by the State statute. See Dows' case, 186 Pa. St., 37. Matters of extradition are under the Federal Constitution and laws, and while State statutes in aid and furtherance of such Constitution and laws have been upheld and should be when called into use, it nevertheless does not affect the validity of the writ issued under authority of the Federal Constitution and laws that the detailed provisions of the State statutes are not, in any given case, required or used. In this case it appears from the record that relator was arrested by the chief of police of Fort Worth upon information furnished him from Louisiana, and if it be conceded that the original arrest was not in accordance with the provisions of title 14, chapter 1, of our Code of Criminal Procedure, it nevertheless appears that upon hearing the executive warrant of the Governor of this State was offered on behalf of the State and that relator was remanded because thereof into the custody of the sheriff of Tarrant County, to be delivered by him to the agent of the State of Louisiana. This was authorized to be done, and the action of the court is supported by and follows the decision of this court in the recent case of Ex parte Lipshitz, decided during this term of the court.

2. Relator's next contention is that he is entitled to be discharged because, as he alleges, the requisition of the Governor of the State of Louisiana in this cause is insufficient and defective in that (1) it is nowhere stated in said requisition that the relator had ever been charged, by either indictment found or by affidavit made, with the violation of any law of the State of Louisiana, and (2), because it is nowhere stated in said requisition that any charge made against the relator in the State of Louisiana by indictment or by affidavit is fully authenticated. In the statement of facts there appears the following:

"Exhibit A.

"State of Louisiana,

Executive Department.

"The Governor of the State of Louisiana

To the Governor of State of Texas:

"Whereas, Louis Bergman stands charged in the Parish of Caddo, in this State, with the crime of retailing intoxicating liquors without a license, and it has been represented to me that he has fled from justice and has taken refuge in the State of Texas; and,

"Whereas, agreeably to the Constitution of the United States, and an Act of Congress passed February 12, 1793, I have made application to his Excellency the Governor of the State of Texas for the surrender of the said Louis Bergman, fugitive from justice, and have also, in pursuance of the powers vested in me by law, appointed W. McD. Cawthorn agent on the part of the State of Louisiana, for the purpose of receiving the said Louis Bergman from the constituted authorities of the said State of Texas whenever he shall have been surrendered in accordance with such application, and bringing him into this State to be dealt with according to law:

"These are, therefore, to request and require all persons to permit the said W. McD. Cawthorn, agent, as aforesaid, to execute the trust herein imposed on him and to render all lawful . necessary assistance in the premises.

"This State will not be responsible for any expense attending the execution of the requisition for the arrest and delivery of fugitives from justice.

"In testimony whereof, I have hereunto set my hand and caused to be affixed the great seal of the State of Louisiana.

"Witness Jared Young Sanders, Governor of our said State, at the city of Baton Rouge, this 24th day of March, in the year of our Lord nineteen hundred and ten, and of the Independence of the United States of America, the one hundred and thirty-fourth, and of the State of Louisiana the ninety-eighth.

"By the Governor,

"J. Y. Sanders.

(Seal).

"Eugene J. McGirney,

"Asst. Secretary of State."

This was the only instrument offered in evidence in the court below signed by the Governor of Louisiana. The further contention is made that the requisition is wholly insufficient in that it does not show that an indictment had been found or affidavit made in the demanding state against . relator, and that same has been duly authenticated by the Governor of the demanding State. It seems the case was tried in the court below and is briefed here upon the assumption that the instrument above set out was a requisition

issued by Governor Sanders upon the Governor of this State. · It is, however, manifestly insufficient in the particulars mentioned to comply with the requirements of the provisions of the Constitution and statutes of the United States above quoted, if in fact such paper is the requisition issued by the executive of the demanding state. It does not, however, purport to be a requisition, but upon its face appears to be only a commission of appointment issued to the said W. McD. Cawthorn to act as agent for said State of Louisiana for the purpose of receiving relator from the constituted authorities of Texas, to take him into the State of Louisiana. For such purpose it is a sufficient document, and appears to be in the usual form. It nowhere appears in the statement of facts, nor is it proven therein that the exhibit above copied was the *only* paper presented by. the Governor of Louisiana to the Governor of Texas. The warrant for the arrest of relator as shown in the statement of facts is as follows: "The State of Texas:

"To all and singular the sheriffs, constables, and other civil officers of said State:

"Whereas, it has been made known ·to me by the Governor of the State of Louisiana that Louis Bergman stands charged by indictment and conviction before the proper authorities with the crime of re- tailing intoxicating liquors without a license committed in said State, and that the said defendant has taken refuge in the State of Texas; and, whereas, the said Governor, in pursuance of the Constitution and laws of the United States, has demanded of me that I cause the said fugitive to be arrested and delivered to W. McD. Cawthorn, who is, as is satisfactorily shown, duly authorized to receive him into custody and convey him back to said State; and, whereas, said demand is accompanied by copy of said indictment and judgment duly certified as authentic by the Governor of said State.

"Now, therefore, I, T. M. Campbell, Governor of Texas, by virtue of the authority vested in me by the Constitution and laws of this State, and the United States, do issue this my warrant, commanding all sheriffs, constables, and other civil officers of this State, to arrest and aid and assist in arresting said fugitive, and to deliver him when arrested to the said agent in order that he may be taken back to said State to be dealt with for said crime.

"In testimony whereof, I have hereunto signed my name and have caused the seal of State to be hereon impressed, at Austin, Texas, this 28th day of March, A. D. 1910.

"T. M. CAMPBELL,<br>"Governor.

(Seal).
    "By the Governor.
        "W. B. TOWNSEND,
            "Secretary of State."

It will be presumed in the absence of a showing to the contrary that the Governor of this State in issuing his warrant for the arrest of relator acted only upon a proper and legal requisition by the Governor of the State of Louisiana. Hyatt v. People, 188 U. S., 691. In that case, speaking through Mr. Justice Peckham, the court says: "We are of opinion that the warrant of the Governor is but prima facie sufficient to hold the accused, and that it is open to him to show by admissions, such as are herein produced, or by other conclusive evidence, that the charge upon which extradition is demanded assumes the absence of the accused person from the State at the time the ·crime was, if ever, committed. This is in accordance with the authorities in the States cited in the opinion ·of Judge Cullen in the New York Court of Appeals, and is, as we think, founded upon correct principles. Robb v. Connolly, 111 U. S., 624, 28 L. Ed., 542, 4 Sup. Ct. Rep., 544, recognizing authority of States to act by habeas corpus in extradition proceedings." The point there decided is thus well stated in the syllabus in the Lawyers' Edition (vol. 47, p. 657, of the Supreme Court Reports of the United States): "A warrant issued by the Governor of a State is prima facie evidence to hold the accused; and it is open to him to show on habeas corpus by omissions or by other conclusive evidence that the charge upon which the extradition was demanded assumes his absence from the demanding state at the time the crime was, if ever, committed." The recitals in his warrant of arrest that the demand was accompanied by a complaint and information, affidavits and warrant of arrest, are, it seems, conclusive on a writ of habeas corpus when not disputed. Ex parte Lewis, 79 Cal., 95.

The recitation in the warrant above quoted is that "Louis Bergman stands charged by indictment and conviction," and it contains the further recitation that "said demand is accompanied by copy of said indictment and judgment duly certified as authentic," which recitations were attacked upon the trial in the lower court, as follows:

"It was agreed that no indictment was ever found against this applicant in the State of Louisiana, but that his arrest and conviction was upon the following information marked

Exhibit C.

"State of Louisiana,
  Parish of Caddo.

"I, J. M. Foster, District Attorney for the First Judicial District of Louisiana, who, in the name and by the authority of said State, prosecute in this behalf, come into the said District Court for the First Judicial District, State of Louisiana, on this, the 4th day of October, in the year of our Lord one thousand nine hundred and nine, and give the said court to understand and be informed that Louis Bergman and James Godfrey, late of the Parish of Caddo, on the 30th day of September, in the year of our Lord one thousand

nine hundred and nine, at and in the Parish, District and State aforesaid, unlawfully did retail intoxicating liquors, without first obtaining a license from the police jury of the Parish of Caddo, or the municipal authorities of the City of Shreveport, contrary to the form of the statute of the State of Louisiana, in such case made and provided, and against the peace and dignity of the same.

"J. M. FOSTER,

"District Attorney,

"First Judicial District, La.

"A True Copy—Attest:
(Seal).
"A. F. HARDIN, Clerk.

"Exhibit Ca.

"State of Louisiana,
Parish of Caddo.

"I, J. M. Foster, District Attorney for the First Judicial District of Louisiana, who, in the name and by the authority of the said State, prosecute in this behalf, come into the said District Court for the First Judicial District, State of Louisiana, on this the 4th day of October, in the year of our Lord one thousand nine hundred and nine, and give the said court to understand and be informed that Louis Bergman and James Godfrey, late of the Parish of Caddo, on the 1st day of October, in the year of our Lord one thousand nine hundred and nine, at and in the Parish, District and State aforesaid, unlawfully did retail intoxicating liquors, without first obtaining a license from the police jury of the Parish of Caddo, or the municipal authorities of the City of Shreveport, contrary to the form of the statute of the State of Louisiana, in such case made and provided, and against the peace and dignity of the same.

"J. M. FOSTER,

"District Attorney,

"First Judicial District, La.

"A True Copy—Attest:
(Seal).
"A. F. HARDIN, Clerk."

Now, it has been held that the term "charged" applies to persons convicted as well as to persons merely sought for the purpose of trial. Moore on Extradition and Interstate Rendition, section 530; Bishop's New Criminal Procedure, section 220, subdivision 4; In re Hope, 10 N. Y. Sup., 28; Dolan's case, 101 Mass., 219; Hollan v. Hopkins, 21 Kan., 459; 1 Hale's Pleas of the Crown, 602; Cleek v. Com., 21 Gratt., 777; State v. Cockerham, 2 Iredell L., 204; Ex parte Clifford, 29 Ind., 106.

3. A more serious question, however, is presented for consideration, it being shown by the entire record that there was no indict-

ment ever found against relator in the State of Louisiana, and further, it appearing that he was not charged by affidavit with a crime, but that his arrest and conviction was upon information. Is this a sufficient compliance with the provisions of the Federal Constitution and statutes? The words of article 4, section 2, of the Constitution, are: "A person charged in any State. . . ·" The words of section 5278 of the Revised Statutes of the United States on this subject are: "Whenever the executive authority of any State or Territory demands any person as a fugitive from justice . . . and produces a copy of an indictment found, or affidavit made before a magistrate . . . charging the person demanded," etc. Is the information above referred to a sufficient compliance with these requirements? On this question the authorities are by no means unanimous. It has been held that when prosecution by information has been adopted by a State making demand for rendition, it must be considered prima facie evidence of a crime charged against the accused under the laws of that State. In re Van Sciever, 42 Neb., 772; In re Hooper, 52 Wis., 699; Bishop's New Crim. Proc., sec. 222, subdivision 2; People v. Stockwell, 97 N. W., 765 (Mich. Sup. Court). This proposition, however, is strongly combatted by numerous well considered authorities. Ex parte Hart, 63 Fed. Rep., 249; State v. Richardson, 34 Minn., 115; State v. Hufford, 28 Iowa, 391. In the Hart case, supra, in discussing the validity of a writ issued upon a requisition based upon an information similar to the one above quoted, the court said:

"An information can not be regarded as a substitute for an indictment where the latter is required in the legislation now under consideration. While it is in the power of the State to provide for the prosecution and punishment of all manner of crime by information, and without indictment by a grand jury (as was held by the Supreme Court of the United States in Hurtado v. California, 110 U. S., 516, 4 Sup. Ct., 111, 292), still, if they wish to rely upon the provisions of the Constitution and laws of the United States relating to fugitives from justice, they must strictly observe and respect the conditions of the same. The indictment had in mind by those who framed the Constitution and enacted the statute referred to was 'a written accusation of one or more persons of a crime or misdemeanor preferred to and presented upon oath by a grand jury.' 4 Bl. Comm., 299-302. The Supreme Court of the United States has recently described an indictment, as that word is used in the Constitution, as 'the presentation to the proper court, under oath, by a grand jury, duly impaneled, of a charge describing an offense against the law for which the party charged may be punished.' Ex parte Bain, 121 U. S., 1, 7 Sup. Ct., 781. In this first requisition the copy of the information is all that is certified to be authentic. . . . The information is verified by the prosecuting attorney, who swears that he believes the contents thereof to be

true, not that they are true. This is not such charging of the commission of a crime before a magistrate of the State as is contemplated by the statute. For the purposes of an affidavit to be used for the arrest and removal of fugitives from justice, this is not sufficient. The affidavit required in such cases should set forth the facts and circumstances relied on to prove the crime, under the oath or affirmation of some person familiar with them, whose knowledge relative thereto justifies the testimony as to their truthfulness, and should not be the mere verification of a court paper by a public official, who makes no claim to personal information as to the subject matter of the same. . . . By requiring such an affidavit, the liberty of the citizen is, to a great extent, protected, and the executive upon whom the demand is made is thereby enabled to determine if there is cause to believe that a crime has been committed. To authorize the removal of a citizen of Maryland to the State of Washington for trial on a charge of crime something more than the oath of a party unfamiliar with the facts that he believes the allegations of an information to be true should be required, and is demanded by the law. To hold otherwise would enable irresponsible and designing parties to make false charges with impunity against those who may be the subjects of their enmity, and permit them, after they have caused public officials to believe their representations, to secure the arrest, imprisonment, and removal of innocent persons on papers regular in character, but without merit and fraudulent in fact."

It seems to us that it may well be doubted that a person charged by information before conviction is within the meaning of section 2 of article 4 of the Federal Constitution. This seems to be the holding of this court in Ex parte Cheatham, 50 Texas Crim. Rep., 51. Section 5278 was enacted to carry into effect this provision of the Constitution, and in the use of the terms "indictment found or affidavit made" it is broader in meaning than the language of the Constitution. The reason for this requirement of the law and the justice of it is well stated in the Hart case, supra. However, in this case the statement of facts contains, in addition to the matters above mentioned, the following: "It was agreed that the appellant, Louis Bergman, is charged with violating the local option laws or prohibition laws of the State of Louisiana, in the Parish of Caddo, said State; that he was tried in a court of competent jurisdiction and convicted, and given a fine of $500 and 120 days on the road; that while he had been working on the road he escaped and came to Texas, having worked on the road thirty odd days. That the conviction of the appellant in Louisiana was for a misdemeanor." Now, it thus appearing that under the laws of the State of Louisiana, crimes such as that with which the appellant stood charged, are actionable under the law of that State by information such as is here

presented, and it further appearing that appellant was there legally convicted and sentenced under such information, do any of the reasons urged against considering an information against the accused a sufficient charge, under the terms of the Constitution and law above mentioned, apply here? In this case it affirmatively appears that appellant had been legally charged with an offense in the State of Louisiana, tested by its laws, and had on such trial been convicted. Manifestly the reason of the rule ordinarily requiring the presentment of an indictment or the making of an affidavit before one can be extradited, is that there shall appear in the proceedings either the finding by a grand jury of the facts justifying an official presentment, or an affidavit of some credible person having personal knowledge of the facts. In such case and before trial the law could well withhold its hand, upon the action of an officer having no information touching the offense charged, and deny the demanding State the right of extradition upon an ex parte showing by one having no knowledge in fact of the real transaction. But where, as in this case, a party has been legally charged under the laws of the State with an offense, and this case has been prosecuted and conviction and judgment found against him affirming the truth of the matters contained in the information and adjudging all the consequences of conviction, it would seem that in reason that after such conviction he could be extradited. It is well settled that under the law of comity that we should yield some reasonable respect and give some fair recognition to the judgments and decrees of a sister State, and as the matter here appears it would be showing too scant respect to the judgment of the State of Louisiana to refuse recognition of it, because it had been obtained on an information, and not an affidavit, where on the trial with opportunities for defense the relator had been found guilty as charged, and particularly where, as in this case, it affirmatively appears that relator was legally charged under the laws of Louisiana, and legally convicted. To hold otherwise is to hold that such a convict can never be extradited, since he can never be either charged or tried for this same offense.

4. Appellant submits the following assignment of error: "The court erred in remanding the relator and in giving to the sheriff of Tarrant County the instructions set out in the statement of this cause for the reason that it was not shown that the relator was a fugitive from justice from the State of Louisiana, or from any other State. On the contrary, it was shown that the relator was not a fugitive from justice." In the statement of facts there appears in evidence an Act of the Legislature of the State of Louisiana, as follows:

"Be it enacted by the General Assembly of the State of Louisiana, That article 436 of the Code of Practice of Louisiana be amended and reenacted to read as follows:

'Article 436. When the witness intended to be examined lives

out of the State it shall be sufficient for the party wishing to take his testimony to apply for same to any judge having jurisdiction of the case and swear to the materiality of the testimony; provided, that no commission shall be issued to take the testimony of ·a fugitive from justice from this State, nor shall any such deposition be admissible in evidence on the trial of any cause in this State.

'Any person indicted or convicted in any of the courts of this State of an offense punishable by death or imprisonment in the penitentiary and who shall escape from the limits of the State to avoid punishment ˙shall be deemed a fugitive from justice.' "

It need not be determined whether the last paragraph above quoted has any other application than as defining a fugitive from justice within the meaning and for the purpose of said act alone. It certainly can not control and need not necessarily nullify and destroy the definition of "a fugitive from justice" within the meaning of section 5280 of the United States statutes, supra. Said law of the State of Louisiana does not purport to discuss the subject of extradition. Said section 5278 by the use of the following words: "An indictment found, or affidavit made . ˙ . charging the person demanded with having committed treason, felony, or other crime," includes not only offenses punishable by death or imprisonment in the penitentiary, but misdemeanors as well. See Moore on Extradition, vol. 2, sections 521-522; Ex parte Reggel, 114 U. S., 642. The words "treason, felony or other crime" embrace any act forbidden and made punishable by the laws of the State making the demand. In re Hooper, 52 Wis., 699; State v. Stewart, 60 Wis., 587; Ky. v. Dennison, 24 How. (U. S.), 66; Taylor v. Taintor, 16 Wall. (U. S.), 366; Hibler v. State, 43 Texas, 197. In the last named case, the court, speaking through Chief Justice Roberts, says:

"This provision of the Constitution of the United States, requiring the surrender of fugitives from justice, is in the nature of a treaty stipulation between the States of the Union, and it is equally binding upon each State and all of the officers thereof for its faithful execution, as though it was a part of the Constitution of each State, whether Congress had passed laws relating thereto or not. Those laws have been passed to ˙establish uniformity in the mode of performing this constitutional duty resting upon each State. When its execution is put into active operation by the proper authority of this State, the Governor, based upon the authentic information and demand as required by law, it is equally obligatory upon all of the officers of this State as is the enforcement of any criminal proceeding under the Constitution and laws of this State; and any undue means resorted to for the purpose of thwarting or preventing the due execution of this duty of the State are equally to be reprehended. This may be done by abusing and perverting the privileges of the writ of habeas corpus as well as by any other means. This is a great writ of liberty, by being left unshackled with forms and conditions in

the mode of obtaining it. Therefore it can easily be obtained where there is no foundation for it in fact or in law.

"This would be an abuse of the privilege which, if frequently resorted to, might make it necessary to impose such limitations and restrictions upon the granting of it as would materially impair its efficacy. It is a privilege too dear to freedom to be endangered by intentional abuse of it by those who are connected with the administration of the laws. So it has been appreciated and acted on in times past, and, it is to be hoped, will continue to be in future.

"These remarks are made to induce caution in the exercise of this high privilege, and a conscientious resort to it only to accomplish its legitimate purposes, rather than to make any reflection upon the proceedings in this case, which have doubtless been instituted under the belief of counsel that it has been done in the assertion and for the procurement of a lawful right."

The fact that in the judgment rendered against appellant there was adjudged against him a pecuniary fine and sentence in jail, is not proof that the crime charged against him is not a felony. A felony is an offense which *may* be punished by imprisonment in the penitentiary, and it is not shown that the punishment under the law of Louisiana for the offense charged against appellant might not have been by imprisonment in the penitentiary.

On the whole case, while not free from difficulty, we have concluded that no sufficient reason appears why the judgment of the court below should be reversed. On the contrary, we think the conclusion reached is sound, and that the judgment should be and it is hereby in all things affirmed.

*Affirmed.*

McCord, Judge, absent.