## *Ex parte* WILLIAM ROMANES on *Habeas Corpus*.

A party may be arrested on complaint made, and upon proper evidence may be held for a crime committed in another State or Territory, a sufficient length of time to communicate with the Executive of such State or Territory, *before demand* made by such Executive.

APPLICATION of Petitioner, who was under arrest, for his discharge. The facts are stated in the opinion of the Court.

TITUS, C. J., delivered the opinion:

William Romanes was charged, on the 6th of September last, before the Judge of the Third Judicial District of the Territory of Utah, with the willful, deliberate and unprovoked murder of two unoffending men in Dakota. The testimony, which was strongly *prima facie*, was laid before the Governor of Utah, and by him submitted to the Governor of Dakota. The prisoner was committed to custody here to await the action of the latter Executive, and upon these facts and proceedings the accused presents his petition, denying the legality of his restraint and asking for his discharge.

Upon this question, it may be submitted as a law of nature, and therefore of universal obligation, that men, whether individually or in mass are not bound to associate with murderers; and that nations and States, as well as those charged with the police powers of Territories, such as those of the United States, may expel or repel them from their borders.

The first murderer was regarded by himself, and it seems by others, as an outcast whom any man might slay. Gen. IV. 14.

And nations and States may remove or expel murderers, as well as other criminals from their territories. Kent's Coms. Vol. 1, passim; Vattel Book 2, Ch. 8, Sec. 100; New York *v.* Miln, 11 Peters 102; Holmes *v.* Jennison, 14 Peters 540; Ogden *v.* Gibbons, 9 Wheaton 199; License Cases, 5 Howard 504; Passenger Cases, 7 Howard 283.

The power to prevent, to punish, to repel and to remove crime and criminals, arises, it is submitted, from the universal law of self preservation and self protection, and it may in all cases be exercised in some effective way by those who wield the police forces of the community. And those who ask us to deny this power to

Utah, and the other Territories of the United States, must confront the foregoing principles and precedents, as well as many others equally authorative.

But it is hardly possible to resist the conclusion that all statutes of the United States, relating to the arrest and delivery of fugitives from justice as well as other criminals, apply to this case.

The Act of Congress, Sept. 24, 1789, Sec. 33, First Statutes at Large, p. 9, provides, that: " For any crime or offence against the United States, the offender may by any Justice or Judge of the United States, or by any Justice of the Peace or any Magistrate of any of the United States, where he may be found, agreeably to the usual mode of process against offenders in such State, and at the expense of the United States, be arrested and imprisoned, or bailed, as the case may be, for trial before such Court of the United States, as by that act has cognizance of the offence."

And the same act directs the removal of offenders thus arrested in other districts, into the districts where they are to be tried.

The Act of Congress, Feb. 12, 1793, Sec. 1, First Stat. at Large, p. 302, regarding fugitives from justice, provides, that: "Whenever the Executive of any State of the Union, or of either of the Territories northwest or south of the Ohio, shall demand any person as a fugitive from justice, of the Executive authority of any State or Territory, to which such person shall have fled, and shall moreover produce the copy of an indictment found, or affidavit made before a Magistrate of any State or Territory as aforesaid, charging the person so demanded with having committed treason, felony or other crime, he shall be arrested and secured and notice of the arrest be given to the Executive authority making such demand."

And a Magistrate, on proper evidence, has power to order the arrest of a fugitive from justice *before demand;* and to detain him until a requisition can be made upon the Executive of the State, to which he has fled. Comm. *v.* Deacon, 10 S. and R. 135; Dow's Case, 6 Harris 39;

4

Phila. R. 234; Hyer's Case, Phila. Quar. Sess.; 3 Zabr. 311; The State *v.* Buzine, 4 Harrington 572; Clark's Case, 9 Wendell 221; Goodhue's Case, 1 City Hall Rec. 153; Gardner's Case, 2 John's 477; Comm. *v.* Wilson, Phila. Rec. 80.

The affidavit, when that form of evidence accompanies the requisition, must be sufficient to justify the commitment of the accused to answer the charge. 6 Penn. L. J. 414, 418. And it must allege that the party is a fugitive from justice. *Ex parte* Smith 3, McLean 131, 132; Fetter's Case, 3 Zabr. 311; Hayward's Case, 1 Sandf. S. C. 701; Legant *v.* Michael, 2 Carter 396.

By these constructions of the act last cited, the allegation of the *flight* of the accused is required to be made only in the affidavit of the power demanding his arrest and delivery, and nowhere else.

The skulking haste, the shifting evasions, and the shrinking alarm, though frequent consequences, are no part of the crime, and they need not elsewhere appear in any of its manifestations or averments. And the statement of the *flight* is required there only to conform to the mere letter of the statute.

If a man commits a crime, in a State or Territory not his own, and then deliberately, openly and defiantly, by the ordinary mode of travel, return to his *usual* home in some other State or Territory, he cannot be said, in any actual specific sense, to be a fugitive from justice. *Constructively*, however, any one who commits a crime is a fugitive from justice from the moment he does so, until the hand of justice shall seize or her mandate shall incarcerate him; and this implied conformity is all that the law really requires. If any of the characteristics of the fugitive were an indispensable part of the crime, or necessary to its punishment, then the monster who could perpetrate a crime, however atrocious, and *feel* none of the pangs of guilt, but even *act* as if he were entirely innocent, would escape by his own insensibility and hardihood.

The application of these statutes to the Territories of the United States, is not only fit and proper, but it relieves a grave necessity, which without such application must exist in our Territorial laws and intercourse.

We are not, however, left to conjecture the application of the laws above cited to the Territory of Utah; for its organic law provides: "Sec. 17. That the Constitution and Laws of the United States are (thereby) extended over and declared *to be in force* in said Territory of Utah, so far as the same or any provision of them shall be applicable." Congress has thus positively extended the Constitution and Laws of the United States, and the statutes above cited, which are obviously applicable among them, over the Territory of Utah. And it has not given them to this Territory as mere abstractions, awaiting legislative application; but it has declared that they shall *be in force*; that is, they shall be applicable and applied in all proper cases, by some power then and still existing in the Territory of Utah, able and authorized to administer them, so far as they or any provision of them are applicable at all. That power, it is submitted, can be no other than that of those charged with the administration of its police regulations. Among these are the District Judges, who, both by the nature of their functions and the letter of the law, are "conservators of the peace."

Finally it may be added, the poor murderer has none of the rights of personal liberty left him. They fall with his victim. And his offence not being bailable, the only right which the law recognizes as his, is that of legal trial, which consigns him to imprisonment as enduring as his life, or to a premature grave by the death penalty and the scaffold.

The case presented appears, hence, to be entirely proper for the action of the authorities here, and the law of its disposition clear.

The offence with which the prisoner William Romanes is charged not being bailable, he ought to remain in custody sufficient time to hear from the Executive of Dakota.

And his application is therefore denied, and his petition dismissed.