*Ex parte* RALPH T. OWEN.

No. A-2123.   Opinion Filed November 15, 1913.

(136 Pac. 137.)

1.    COURTS—Extradition—Habeas Corpus—Interstate—Grounds—Determination — Review by Courts — Proceedings—''Magistrate''—Strict Construction of Statute. (a) The power which independent nations have to surrender criminals to other nations as a matter of favor or comity is not possessed by the states of the Union; and no person can be surrendered by one state to another, unless the case falls within the provisions of the Constitution and laws of the United States.

(b) The Governor of a state, upon whom a demand is made for the return of a fugitive from justice to a sister state, must determine for himself, in the first place, as to whether or not the demand made is in compliance with the law, and as to whether or not the person whose return is sought is in fact a fugitive from justice; but his decision is subject to review by the courts in habeas corpus proceedings, otherwise the Governor would be clothed with arbitrary and despotic power, and there could be no uniform action in such matters in all of the states of the Union.

(c)  Under the laws of the United States, an application for a requisition, made upon the Governor of any state for the return of a fugitive from justice, must be accompanied with a copy of an indictment found or an affidavit made before a magistrate of the state seeking to secure such return, charging the person demanded with having committed treason, felony, or some other crime; and, unless this provision of the federal statutes is complied with, an order of the Governor for the return of such fugitive is null and void; and it is the duty of the courts in proper proceedings to so determine and order the release of the alleged fugitive from justice.

(d)  A notary public, who has no other power than to swear witnesses and take depositions in the state in which he is appointed, is not a magistrate within the meaning of the law, and an affidavit made before such notary public is not worth anything more than so much blank paper in extradition proceedings.

(e)  Extradition proceedings being based upon an act of Congress, and the federal courts having decided that such act must be strictly construed, and that all of its requirements must be respected, this court is without the power or authority to construe such act liberally, but will be compelled to follow the rule laid down by the federal court, and require that all of the provisions of the federal law relating to requisitions must be strictly observed and respected.

2.    EXTRADITION—Arrest—Requisites of Affidavit—Right to Grant Extradition.  (a)  In order to be the basis of and support requisition proceedings, where an affidavit made before a magistrate is relied upon, such affidavit must be sworn to positively as a matter of fact.  It is the law, both of the United States and of the state of Oklahoma, that no warrant can be issued for the arrest of any person unless it is supported by some fact certain, positively sworn to before a proper officer.  An affidavit verified as a matter of belief by the prosecuting witness is insufficient, and a warrant issued upon such affidavit, if properly objected to, will be set aside.

(b)  Courts should not tolerate or condone disregard of law and arbitrary usurpation of power on the part of any officer.  Ours is a government of law, and not of men, and before any act of any official will be sustained by the courts such act must be authorized by law.

Application for writ of *habeas corpus* by Ralph T. Owen. Writ allowed, and petitioner discharged.

Hon. Lee Cruce, Governor of the state of Oklahoma, having issued his warrant in extradition proceedings for the return of Ralph T. Owen to the state of Iowa, as a fugitive from justice, upon the ground that said party was guilty of obtaining money under false pretenses, and the said Ralph T. Owen being in custody by virtue of the warrant issued by the Governor of the state of Oklahoma on such proceedings, applied to this court

for a writ of *habeas corpus*. Upon the hearing of this cause, all the papers which were before the Governor of Oklahoma, and upon which he acted, were admitted in evidence. All the facts involved in the determination of this cause are stated in the opinion. The case was orally argued by McAdams & Haskell for the petitioner, and Clinton O. Bunn for the state of Iowa; and briefs were filed by respective counsel. Writ allowed, and petitioner discharged.

*Thomas Marcum, W. H. Harrison, S. M. Rutherford,* and *McAdams & Haskell,* for petitioner.

*Clinton O. Bunn,* for State of Iowa.

FURMAN, J. (after stating the facts as above). First. Section 2, art. 4, of the Constitution of the United States is as follows:

"The citizens of each state shall be entitled to all privileges and immunities of citizens in the several states.

"A person charged in any state with treason, felony, or other crime, who shall flee from justice, and be found in another state, shall on demand of the executive authority of the state from which he fled, be delivered up, to be removed to the state having jurisdiction of the crime."

In conformity to this provision of the Constitution, Congress has enacted the following law:

"Whenever the executive authority of any state or territory demands any person as a fugitive from justice, of the executive authority of any state or territory, to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any state or territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the Governor or chief magistrate of the state or territory from whence the person so charged has fled, it shall be the duty of the executive authority of the state or territory to which such person has fled, to cause him to be arrested and secured, and to cause notice of the arrest to be given to the executive authority making such demand, or to the agent of such authority appointed to receive the fugitive, and to cause the fugitive to be delivered to such agent when he shall appear. If no such agent appears within six months from the time of the arrest, the prisoner may be discharged. All costs or expenses

incurred in the apprehending, securing, and transmitting such fugitive to the state or territory making such demand shall be paid by such state or territory." (See act of February 12, 1793, c. 7 [1 St. at L. 302].)

The proceeding in this case being authorized by the Constitution and laws of the United States, we are bound in the determination of the questions presented by the decisions of the federal courts.

Chief Justice Taney, delivering the opinion of the court in *Kentucky v. Dennison, Governor of Ohio,* 24 How. 104, 16 L. Ed. 717, said:

"The Constitution having established the right on one part and the obligation on the other, it became necessary to provide by law the mode of carrying it into execution. The Governor of the state could not, upon a charge made before him, demand the fugitive; for, according to the principles upon which all of our institutions are founded, the executive department can act only in subordination to the judicial department, where rights of person or property are concerned, and its duty in those cases consists only in aiding to support the judicial process and enforcing its authority, when its interposition for that purpose becomes necessary, and is called for by the judicial department. The executive authority of the state, therefore, was not authorized by this article to make the demand unless the party was charged in the regular course of judicial proceedings. And it was equally necessary that the executive authority of the state upon which the demand was made, when called on to render his aid; should be satisfied by competent proof that the party was so charged. This proceeding, when duly authenticated, is his authority for arresting the offender."

The Supreme Court of Florida, in *Ex parte Powell,* 20 Fla. 807, at page 810, in the body of the opinion, after quoting from the Dennison case, *supra,* said:

"It is very clearly stated by Chief Justice Taney, in the opinion referred to, that the affidavit required by the act of Congress must be made in the due course of judicial proceedings, and that the executive authority of the state in such cases can be interposed only in the aid of the courts in the due administration of justice. The act of Congress requires that the affidavit be 'made before a magistrate' of the demanding state, 'charging the person demanded' with having committed a crime, which affidavit shall be authenticated by the certificate of the Governor of that state.

In every similar case reported, so far as we have been able to examine the decisions of other states, the affidavit presented to the Governor was made before a judicial officer in the course of a criminal prosecution. As Judge Taney remarks, 'The Governor of a state could not, upon a charge made before him, demand the fugitive.' An affidavit made before a notary, or other ministerial officer or person having no judicial authority, would not authorize the Governor to make the demand. It is well known that in every state persons who are not 'magistrates' are empowered to certify the acknowledgment of deeds and to administer oaths, and so it cannot be presumed that because an oath is taken the person certifying it is a judicial officer, and that it is taken in the course of the administration of justice in a criminal prosecution. The act of Congress is explicit, that the 'charge' must be made * * * by the executive authority in aid of the judicial authority in administering laws for the punishment of crime."

In *People ex rel. Corkran v. Hyatt,* 172 N. Y. 176, 64 N. E. 825, 60 L. R. A. 774, 92 Am. St. Rep. 706, the Supreme Court of that state said:

"The power which independent nations have to surrender criminals to other nations as a matter of favor or comity is not possessed by the states of the Union, and no person can be surrendered by one state to another unless the case falls within the provisions of the United States Constitution."

In *Cook v. Hart,* 146 U. S. 193, 13 Sup. Ct. 43, 36 L. Ed. 939, the Supreme Court of the United States said:

"We have no doubt that the Governor upon whom the demand is made, must determine for himself, in the first instance, at least, whether the party charged is in fact a fugitive from justice, * * * but whether his decision thereon be final is a question properly to be determined by the courts of that state."

In *Roberts v. Reilly,* 116 U. S. 80, 6 Sup. Ct. 291, 29 L. Ed. 544, the Supreme Court of the United States said:

" 'A person charged in any state with treason, felony, or other crime, who shall flee from justice and be found in another state, shall, on demand of the executive authority of the state from which he fled, be delivered up to be removed to the state having jurisdiction of the crime.' Article 4, sec. 2, c. 2. There is no express grant to Congress of legislative power to execute this provision, and it is not, in its nature, self-executing; but a contemporary construction, contained in the act of 1793 (1 St.

at L. 302), ever since continued in force, and now embodied in sections 5278 and 5279 of the Revised Statutes, has established the validity of its legislation on the subject. 'This duty of providing by law,' said Chief Justice Taney, delivering the opinion of the court in *Kentucky v. Dennison*, 24 How. 66, 104 [16 L. Ed. 717], 'the regulations necessary to carry this compact into execution, from the nature of the duty and the object in view, was manifestly devolved upon Congress; for, if it was left to the states, each state might require different proof to authenticate the judicial proceeding upon which the demand was founded; and as the duty of the Governor of the state, where the fugitive was found, is in such cases, merely ministerial, without the right to exercise either executive or judicial discretion, he could not lawfully issue a warrant to arrest an individual without a law of the state or of Congress to authorize it.' "

Article 6 of the Constitution of the United States is as follows:

"This Constitution, and the laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any state to the contrary notwithstanding."

Our oaths of office require that we shall support, obey, and defend the Constitution of the United States, and this constitutional provision makes the laws of the United States, made in pursuance thereof, the supreme law of the land. We, therefore, are absolutely bound by the principles announced in the decisions above quoted, and have no discretion in the matter whatever.

In *Ex parte Hart*, 63 Fed. 249, 11 C. C. A. 165, 28 L. R. A. 801, the United States Circuit Court of Appeals for the Fourth Circuit said:

"The provisions referred to will be strictly construed, and all the requirements of the statute must be respected. \* \* \* If they (the states) wish to rely upon the provisions of the Constitution and laws of the United States relating to fugitives from justice, they must strictly observe and respect the conditions of the same."

This proceeding being based upon a federal statute, we are not at liberty to follow the rule of construction which we apply to our own statutes, because the common-law doctrine of a strict

construction of penal statutes is adhered to by the Supreme Court. of the United States, and, under this rule, no person can be deprived of a single right or punished for any offense unless the act complained of, and the proceedings thereon, come strictly within the letter as' well as the spirit of the law. In this case it affirmatively appears that the affidavit relied upon was made before a notary public and not made before a magistrate as required by the United States statute. The verification of the affidavit is as follows:

"State of Iowa, Palo Alto County, ss.: I, H. G. E. Oelfke, being first duly sworn depose and say that I am the person who signed the above and foregoing information and that the statements therein contained are true as I verily believe.

"H. G. E. OELFKE.

"Subscribed in my presence and sworn to before me by the said H. G. E. Oelfke this 27th day of October, 1913.

"A. J. BURT, Notary Public. [Seal.]"

It is true that, upon the hearing of this cause, counsel for the state of Iowa attempted to offer in evidence a certificate from the justice of the peace in Iowa to the effect that, after these proceedings had been instituted, the information had been sworn to before him by the complaining witness; but, upon the objection being made that this would substantially amount to a confession that the papers acted upon by the Governors of Iowa and Oklahoma were insufficient, and that this court had no right to permit amendments to be made to papers which had already been acted upon by the Governors of. Iowa and of Oklahoma, the offer was withdrawn and the cause was submitted upon the papers as they were acted upon by the Governors of the two states. In these papers the following statement appears:

"N. B. This application must be accompanied by a duly ·attested copy of an indictment, or of a certified copy of an information made before a magistrate (a notary public is not a magistrate within the meaning of the statutes) in and for the county in which the offense is alleged to have been committed; and such information must be supported by an affidavit of some person having knowledge, setting forth the details of the commission of the crime."

From this it appears that the attention of the Governor of Iowa, and also of the Governor of Oklahoma, was directly called to the fact that an affidavit made before a notary public would not authorize the issuance of a requisition, but that the affidavit must be made before a magistrate, and that, in Iowa, a notary public does not possess the powers of a magistrate. This notice conclusively shows that the papers in this case were either acted upon without being read, or that the requisition was knowingly applied for, and arbitrarily issued in open defiance of and contempt for law. The same is also true of the action of the Governor of Oklahoma in honoring the requisition. The powers of Governors are great, but they are not above the law, and have no right to substitute their individual views for the law in a single instance. A Governor should set an example of obedience to law, otherwise how can he expect that the people will respect and obey the law. The statutes of the state of Iowa were offered in evidence, and from them it appears that a notary public has no judicial power except to swear witnesses and take depositions, which powers are given him by the law merchant.

Therefore, under the authorities heretofore quoted, we have no discretion, but must hold that the affidavit in the case does not comply with the statute, and is not worth any more than so much blank paper. However, it may be said that a magistrate issued a warrant for the apprehension of petitioner. The answer to this is that, according to the express terms of the United States statute, a requisition is based alone upon the making of an affidavit before a magistrate, and not upon the issuance of a warrant by a magistrate.

Second. The affidavit in this case is not positively sworn to, but is only verified as a matter of belief by the prosecuting witness.

The fourth amendment to the Constitution of the United States is as follows:

"The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly

describing the place to be searched, and the persons or things to be seized."

Section 30 of the Bill of Rights of Oklahoma is as follows:

"The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches or seizures shall not be violated; and no warrant shall issue but upon probable cause supported by oath or affirmation, describing as particularly as may be the place to be searched, and the person or thing to be seized."

The question as to the verification of an accusation which will authorize the issuance of a warrant was first passed upon by the Supreme Court of the United States in the case of *Ex parte Burford,* 3 Cranch, 448, 2 L. Ed. 495. Chief Justice Marshall then said that a warrant of commitment was illegal and void unless supported by oath upon some good cause certain. The affidavit in this case amounts to no more than an expression of opinion by the prosecuting witness. If a person can be deprived of his liberty simply because some one is willing to swear that he believes that such person is guilty of crime, then, as was well said by Chief Justice Marshall in the Burford case:

"If the charge against him was malicious, or grounded on perjury, whom could he sue for malicious prosecution? or whom could he indict for perjury?"

—and he concludes:

"The judges of this court were unanimously of the opinion that the warrant of commitment was illegal for want of stating some good cause certain, supported by oath."

In the *Matter of the Rules of the Court,* 3 Woods, 502, Fed. Cas. No. 12,126, Justice Bradley, of the Supreme Court of the United States, said that when, in an affidavit made, a person swears that he has good reason to believe, and does believe, that a certain person, naming him, has committed an offense against the law, describing it, such affidavit does not meet the requirements of article 4 of the amendments to the Constitution of the United States. This question has been repeatedly passed upon by the courts of this state to the same effect. See *Miller v. U. S.,* 8 Okla. 315, 57 Pac. 836; *Mulkins v. U. S.,* 10 Okla. 288, 61 Pac. 925; *Salter v. State,* 2 Okla. Cr. 464, 102 Pac. 719, 139

Am. St. Rep. 935; *De Graff v. State,* 2 Okla. Cr. 519, 103 Pac. 538. In view of these authorities, we believe that the affidavit presented in this case, even if made before a magistrate, would not be sufficient, because it is based upon the belief of the affiant. The laws of this state do not allow the issuance of a warrant of arrest based upon an affidavit founded upon the belief of the party who makes it. Some fact certain must be sworn to positively, sufficient to cause the magistrate to believe that the offense has been committed, and that accused is probably guilty. It is true that petitioner is not a citizen of Oklahoma. Section 2, art 4, of the Constitution of the United States, provides that the citizens of each state shall be entitled to all the privileges and immunities of citizens in the several states. Under this provision we must extend to petitioner, although he is only a friendless stranger among us, all the rights, privileges, and immunities that could be claimed by any citizen of this state.

We must therefore hold that the warrant of arrest in this case was unauthorized, if for no other reason, upon the ground that the affidavit relied upon was sworn to as a matter of belief, and not as a matter of fact.

Mexico may tolerate and condone acts of assassination, disregard of law, and arbitrary usurpations of power on the part of its executive; but the courts in the United States will never follow this example, unless controlled by partisan appointees. Ours is a government of law, and not of men, and before the act of any official will be sustained by the courts, as long as they are honest, independent, and fearless, such act must be authorized by law.

We therefore have no option except to order that the writ of *habeas corpus* be allowed, and the relator be discharged.

ARMSTRONG, P. J., and DOYLE, J., concur.