(No. 22443.—

THE PEOPLE *ex rel.* James A. LaRue, Plaintiff in Error, *vs.* WILLIAM D. MEYERING, Sheriff, Defendant in Error.

*Opinion filed June 19, 1934.*

NORTHUP & BEARDSLEY, (GRENVILLE BEARDSLEY, of counsel,) for plaintiff in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, and J. ALBERT WOLL, of counsel,) for defendant in error.

Mr. JUSTICE SHAW delivered the opinion of the court:

On December 8, 1933, the relator sued out a writ of *habeas corpus* from the criminal court of Cook county, to which a return was made by the respondent showing that the relator was in custody by virtue of a Governor's fugitive warrant, which had been issued upon requisition from the Governor of Florida. The relator traversed the return and at the conclusion of the hearing was remanded to the custody of the sheriff, to be delivered to the agent for the State of Florida. The cause is before us upon statutory writ of error.

The Governor's warrant shown by the record is in the usual form, reciting the requisition by the Governor of Florida for the relator and that the relator was shown by a commitment to have been charged with the crime of "breaking and entering with the intent to commit a felony." The requisition, with its supporting documents, was introduced in evidence. This requisition, which is in proper and usual form, recites on its face that the annexed documents are certified to be authentic; that relator, James A. LaRue, fugitive from justice, "stands convicted with the crime of breaking and entering with intent to commit a felony and is an escaped convict from the Florida State prison farm." Attached to this requisition, and made a part of it, is a document entitled "Application for requisition," which is in form of an affidavit subscribed

before a notary public by one Nathan Mayo. This affidavit, so far as material, is in part as follows: "Before me, an officer duly authorized to administer oaths and take acknowledgments under the laws of the State of Florida, personally appeared Nathan Mayo, commissioner of agriculture of the State of Florida, who, after first being duly sworn, deposes and says that by virtue of the constitution of the State of Florida he is the head of the prison department, and that the records of said prison department are kept in his office, and that such records show that one James A. LaRue, whose prison number is 24740, was convicted at the November term of the criminal court of record in and for Dade county, Florida, A. D. 1932, and sentenced on the 30th day of November, A. D. 1932, to serve a term of three (3) years in the Florida State prison for the crime of breaking and entering with intent to commit a felony, and that prior to the expiration of said sentence, to-wit, on the 5th day of April, A. D. 1933, the said James A. LaRue made his escape from the Florida State prison and has never returned; and affiant further deposes and says that he is informed and believes that the said James A. LaRue is now a resident of another State other than the State of Florida, to-wit, the State of Illinois, and is now confined in the jail in the city of Chicago, Illinois, and is there known by the name of James A. LaRue." The affidavit proceeds in the form of a request that the Governor requisition the relator's return, and nominates or suggests an agent to receive the relator and return him from Chicago. This affidavit is signed by Nathan Mayo, with the words "Commissioner of Agriculture of the State of Florida" under the line upon which he signs. The jurat reads as follows:

"Sworn to and subscribed before me this first day of December, A. D. 1933. THOMAS E. ANDREWS,
*Notary Public State of Florida at large.*
"My commission expires Dec. 11, 1935."

Also attached is an uncertified copy of a *mittimus* issued by the criminal court of Dade county requiring the imprisonment of the relator in the State penitentiary "for three," without specifying whether the sentence is for three years, three months or three days. These are the only documents supporting the application for requisition, except an attached description, photograph and finger-prints.

Many errors are assigned and argued, but since the case must be disposed of upon the sufficiency or insufficiency of the application for a fugitive warrant contained in the requisition from Florida and its supporting documents, it will be unnecessary to consider any other points which have been raised.

Upon requisition being made for a fugitive warrant, the Governor to whom the request is presented has two questions to pass upon: (1) Whether the person demanded is substantially charged with crime against the laws of the demanding State by indictment or affidavit before a magistrate; and (2) whether he is a fugitive from the justice of that State. (*Munsey* v. *Clough,* 196 U. S. 364; *Roberts* v. *Riley,* 160 id. 80; *Kentucky* v. *Dennison,* 24 How. 66.) The first of these questions is one of law and the second one of fact. (*Roberts* v. *Riley, supra.*) In this case the second question is not involved, and we have only to determine the answer to the first in order to decide the issues in the case.

In extradition proceedings this court is controlled by the constitution of the United States and the act of Congress passed pursuant thereto, and we are bound by the decisions of the Supreme Court of the United States on the question here involved. (*People* v. *Baldwin,* 341 Ill. 604.) Section 2 of article 4 of the constitution of the United States provides as follows: "A person charged in any State with treason, felony, or other crime, who shall flee from justice, and be found in another State, shall on

demand of the executive authority of the State from which he fled, be delivered up to be removed to the State having jurisdiction of the crime." Section 5278 of the United States Revised Statutes, passed pursuant to the foregoing constitutional provision and for carrying it into effect, is as follows: "Whenever the executive authority of any State or territory demands any person, as a fugitive from justice of the executive authority of any State or territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the Governor or chief magistrate of the State or territory from whence the person so charged has fled, it shall be the duty of the executive authority of the State or territory to which such person has fled to cause him to be arrested and secured, and to cause notice of the arrest to be given to the executive authority making such demand, or to the agent of such authority appointed to receive the fugitive, and to cause the fugitive to be delivered to such agent when he shall appear. If no such agent appears within six months from the time of the arrest, the prisoner may be discharged. All costs or expenses incurred in the apprehending, securing, and transmitting such fugitive to the State or territory making such demand, shall be paid by such State or territory."

In *Compton* v. *Alabama,* 214 U. S. 1, 29 Sup. Ct. 605, the Supreme Court of the United States, in referring to proceedings under this statute, used the following language: "The statute, we think, makes it essential to the right to arrest the alleged fugitive under a warrant of the executive of the State where the alleged fugitive is found, that such executive be furnished, before issuing his warrant, with a copy of an indictment or an affidavit before a magistrate in the demanding State and charging the fugitive with crime committed by him in such State. It is there-

fore material under this interpretation to inquire whether the affidavit made the basis in this case of the requisition by the Governor of Georgia, and which is certified to be authentic, was such an affidavit as the Revised Statutes of the United States required (in the absence of an indictment) to be produced to the Governor of Alabama as the basis of any warrant of arrest that he might issue. The record shows that the affidavit, a copy of which accompanied the requisition of the Governor of Georgia, was made, as we have already said, before a notary public. Was that sufficient under paragraph 5278 of the Revised Statutes requiring an affidavit to be made before a 'magistrate?'— that is, before one who could properly be deemed a magistrate within the meaning of the law of the State under whose authority he acts as notary public and in which his duties are discharged."

In the case just quoted from, the affidavit upon which the extradition was based was sworn to before a notary public, as in the case we are considering, and it was held sufficient upon the express ground that under the laws of Georgia the notary public was appointed for a term of four years on recommendation of grand juries and commissioned by the Governor as an *ex-officio* justice of the peace.

Since this requisition comes from Florida, we have deemed it suitable to inquire as to the interpretation given to the act in question by the Supreme Court of that State. We find that in *Ex parte Powell*, 20 Fla. 807, the rule has been definitely laid down that an affidavit before a notary public is not an affidavit before a magistrate within the meaning of the Federal Extradition statute. The court says: "An affidavit made before a notary or other ministerial officer or person having no judicial authority would not authorize the Governor to make the demand. It is well known that in every State persons who are not magistrates are empowered to certify the acknowledgment of deeds and

administer oaths, and so it cannot be presumed that because an oath is taken * * * it is [taken by] a judicial officer and that it is taken in the course of administration of justice in a criminal prosecution. The act of Congress is explicit that the charge must be made * * * by the executive authority in aid of the judicial authority in administering laws for the punishment of crime."

The same precise question was presented to the Supreme Court of Oklahoma in *Ex parte Owen*, 10 Okla. Crim. 284, Ann. Cas. 1916A, 522. The extradition in that case was sought upon an information from Palo Alto county, Iowa, which had been sworn to before a notary public. In disposing of the case favorably for the relator, who sought his release, the court used the following language: "Therefore, under the authorities heretofore quoted, we have no discretion but must hold that the affidavit in the case does not comply with the statute and is not worth any more than so much blank paper."

There is another insufficiency in this affidavit which would render it fatally defective even if sworn to before a magistrate instead of a notary public. The only fact definitely sworn to is "that by virtue of the constitution of the State of Florida he is the head of the prison department, and that the records of said prison department are kept in his office, and that such records show that one James A. LaRue, whose prison number is 24740, was convicted," etc. It will be readily admitted that it is quite a different thing to swear that records show a fact than to swear that the fact itself exists.

It is urged that the copy of the *mittimus* attached to the affidavit above mentioned in some way aids it. It is not referred to in the affidavit and is not certified by anyone to be a true copy, and is furthermore fatally defective in that it sentences the relator to the penitentiary for "three," without saying whether the "three" refers to months, days or years. .

For the reasons indicated, it is apparent that the requisition was insufficient to justify issuance of the fugitive warrant, which is the respondent's only authority here shown for detaining the relator.

The judgment of the criminal court of Cook county is therefore reversed and the relator discharged.

*Judgment reversed and relator discharged.*