## CHARLES LILLEY v. EDWARD A. PLATT

SUPERIOR COURT      FAIRFIELD COUNTY      FILE No. 81966

Memorandum filed August 22, 1950.

*Sigmund Miller* and *Edward Burstein*, of Bridgeport, for the Petitioner.

*Otto Saur,* Assistant State's Attorney, of Bridgeport, for the Respondent.

CULLINAN, J.   In this habeas corpus proceeding the petitioner alleges that he is being illegally confined and deprived of his liberty by the respondent sheriff of Fairfield County.   The basic question presented by the petitioner's application for a writ of habeas corpus concerns the constitutionality of the interstate compact for parolee supervision incorporated in § 8841 of the General Statutes.   The petitioner is being held by Sheriff Platt pursuant to the direction of the parole authorities of the state of New York as a convict whose parole has been revoked.

Lilley, who, at the date of his seizure and detention by Sheriff Platt, was residing in Danbury, Connecticut, is thirty-three years of age.   While a juvenile and while under the age of sixteen, Lilley was first arrested in connection with chicken thefts at Norwalk and was then committed to the Mansfield State Training School at Mansfield, Connecticut, from which he escaped some two and one-half years later on September 19, 1934.   In June, 1936, he and companions engaged in two actual housebreaks and two attempted housebreaks at Norwalk and Milford for which offenses he received a suspended sentence at Cheshire Reformatory.

Thereafter, on October 23, 1936, he broke and entered three lake cottages at Patterson, New York, not far from the Connecticut state line.   Lilley escaped police detection for some weeks until December 1, 1936, when he was arrested at Danbury for the New York authorities, after which, on December 7, 1936, he was sentenced by the County Court of Putnam County, New York, to the New York State Penitentiary at Sing Sing for a term of not less than ten nor more than twenty years as a third-degree burglar.

On January 30, 1937, Lilley was transferred from Sing Sing to a New York institution for male defective delinquents where he remained until his parole on November 22, 1944, after which he was permitted to come to Connecticut to reside and work in Danbury.   Upon accepting his parole from New York, Lilley

entered into the customary standardized parole agreement, providing, among other conditions of parole, that "If I should be arrested in another state during the period of my parole, I will waive extradition and will not resist being returned to the State of New York."

On April 27, 1950, Lilley was arrested at New Milford, Connecticut, charged with intoxication, and was released on the posting of a $25 bond which bond was forfeited on May 15, 1950, when he failed to appear to answer the pending charge. It is on the basis of this arrest that New York now seeks his return as a parole violator, contending that the arrest was sufficient to cause him to be a fugitive from justice within the meaning of New York's penal code.

Lilley, as a New York parolee, was permitted to enter Connecticut under the terms of the "Uniform Act for Out-of-State Parolee Supervision" which is an interstate compact entered into among states for out-of-state parole supervision. Connecticut became signatory to the compact on November 6, 1943, while New York became signatory on February 15, 1944, both states having entered into the compact before Lilley's parole on November 22, 1944. The portion of the interstate compact which is presently applicable is to be found in subsection (3) of § 8841 of the Connecticut General Statutes, reading as follows: "[D]uly accredited officers of a sending state [New York] may, at all times, enter a receiving state [Connecticut] and there apprehend and retake any person on probation or parole, and for that purpose no formalities shall be required other than establishing the authority of the officer and the identity of the person to be retaken; all legal requirements to obtain extradition of fugitives from justice are being expressly waived on the part of the states party hereto, as to such persons and the decision of the sending state to retake a person on probation or parole to be conclusive upon and not reviewable within the receiving state. . . ."

Lilley contends that the interstate compact is unconstitutional in that it is repugnant to provisions of the United States constitution providing for the extradition of fugitives from justice and more specifically, that extradition is the sole means by which an alleged fugitive may be delivered up by one state to another. He also urges that the compact deprives him of his liberty without due process of law in violation of the fourteenth amendment to the United States constitution.

Intelligent administration of modern criminal justice requires generous use of that relatively new device known as parole; otherwise, those who have fallen into criminal ways and exhibited criminal tendencies might think themselves abandoned without hope of personal regeneration or rehabilitation. Enlightened society now recognizes that those who have strayed into fields of grievous crime, for which they are serving substantial deterring sentences, should not be barred for the entire length of the term from an amelioration of the penalty. Thus it is that convictees, during incarceration, are encouraged by penal authorities to develop moral habits and dispositions to right living with release on parole as the anticipated and offered reward. Experience has demonstrated that the complete rehabilitation of a parolee is frequently best effectuated by transferring him to another state or jurisdiction amid new acquaintances, new opportunities and a changed environment, where, if properly disposed, he may work out a full and useful life far from the unhappy influences and memories of earlier and less fortunate days. Our parole system, however, while instituted primarily to benefit the individual parolee, carries a corresponding and high obligation to the law-abiding members of society, who are entitled to sensible and commensurate supervision of the parolee during his readjustment period. For the protection of that society, there is abundant justification for an agreement among states that the authority over parolees should follow them across state lines; otherwise, a check on the inclination to violate parole would be nonexistent.

The interstate compact under consideration represents the social policy of both Connecticut and New York. "It is an agreement for co-operative effort and mutual assistance in the prevention of crime and in the enforcement of the criminal laws of each state within the contemplation of federal legislation on the subject and therefore does not violate the prohibition of the Constitution concerning compacts between states." *Ex Parte Tenner,* 20 Cal. 2d 670, 674.

Counsel urge with genuine sincerity the claim that Lilley is being deprived of his liberty without due process of law in violation of the fourteenth amendment to the United States constitution. They contend further that Lilley's sentence to Sing Sing Prison in 1936 was grossly disproportionate to his offense, and, inferentially, they seek to have that sentence reviewed. Finally they say that Lilley's recent arrest for intoxication was not of sufficient gravity so as to justify revocation of parole and return to New York as a parole violator and fugitive from justice.

The short answer to the claims is that Lilley had his day in court when he was convicted as a third-degree burglar in Putnam County, New York, and then sentenced to Sing Sing Prison for a term from ten to twenty years. He was accorded due process of law at that time and is in no tenable position when he now complains that he was denied his constitutional rights. To be sure his situation has its appealing aspects if it is remembered that he was but nineteen years of age with apparent subnormal mentality when the lengthy Sing Sing sentence was imposed. However one might wish to question the wisdom of that sentence, nevertheless, there is no power in a Connecticut court to review the act of a committing judge of New York. Likewise the parole which he accepted from New York was granted upon the express condition that his arrest in another state during his parole period would expose him to an immediate return to New York. One convicted of crime has the right to reject an offer of parole but once having elected to accept parole, the parolee is bound by the express terms of his conditional release. In re Peterson, 14 Cal. 2d 82.

I am of the opinion that none of the petitioner's constitutional rights has been invaded. Accordingly he is without legal grievance, the writ is discharged, and the petitioner is remanded to the custody of the respondent sheriff.

Pertinent citations touching litigated and related issues may be found at: *Ex Parte Tenner*, 20 Cal. 2d 670; *State ex rel. Eikenbary* v. *Smith*, 54 Ohio Abs. 253; *Gulley* v. *Apple*, 213 Ark. 350; *Pierce* v. *Smith*, 31 Wash. 2d 52; *Rosenberg* v. *Slavin*, 122 Conn. 304; *Innes* v. *Tobin*, 240 U. S. 127, 60 L. Ed. 562.